## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| **MARIA SIMMONS,** | **CIVIL ACTION NO.:** |
| | **2:23-CV-00015-SCJ-JCF** |
| **Plaintiff,** | |
| **v.** | |
| **WAL-MART ASSOCIATES, INC.,** | |
| **Defendant.** | |

## DEFENDANT WALMART'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.      INTRODUCTION

On October 9, 2024, a Non-Final Report and Recommendation ("R&R," Doc. No. 49) was entered recommending that Defendant Wal-Mart Associates, Inc.'s ("Walmart") Motion to Dismiss Plaintiff Maria Simmons' ("Simmons") Third Amended Complaint ("TAC," Doc. 31) be denied. (Doc. 49, p. 1). Walmart respectfully submits the following Objections to the recommended denial of Walmart's Motion to Dismiss the TAC, and respectfully requests that Simmons' TAC be dismissed for failure to state a claim on which relief may be granted.

### II.     STANDARD OF REVIEW

This Court reviews objections to an R&R *de novo*. *See* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); 28 U.S.C. § 636(b)(1)(C); *Mayes v.*

*EnPro Assocs*, NO. 4:21-CV-0203-HLM-WEJ, 2022 WL 15993373, *1 (N.D. Ga. Mar. 16, 2022) ("The Court therefore must conduct a *de novo* review if a party files "a proper, specific objection" to a factual finding contained in the report and recommendation… Legal conclusions, of course, are subject to de novo review even if no party specifically objects."). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *See* Fed. R. Civ. P. 72(b)(3). The Court should give "'fresh consideration to those issues to which specific objection has been made by a party.'" *Taylor v. Cardiovascular Specialists, P.C.*, 4 F.Supp.3d 1374, 1377 (N.D. Ga. 2014) (citing *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990)). The Court also has the discretion to consider arguments that were not raised before the Magistrate Judge. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("The district court in this case had the discretion whether to consider Williams's argument regarding timeliness of his habeas petition when he did not raise the argument in the first instance to the magistrate judge.").

## III.    <u>PROCEDURAL HISTORY</u>

On January 25, 2023, Simmons and six other plaintiffs filed a Complaint against Walmart which asserted various claims, including, but not limited to, claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA") (Doc. 1, at ¶¶ 88-135). After Walmart answered, plaintiffs filed an Amended Complaint

which added 28 additional plaintiffs (for a total of 35 plaintiffs) and alleged claims pursuant to the FLSA, among other claims. (Docs. 6, 9, at ¶¶ 269-362). On April 3, 2023, Walmart moved to sever plaintiffs' claims and moved to stay the proceedings until after the Court ruled on the Motion to Sever. (Docs. 13, 14). The Court granted the stay pending resolution of the Motion to Sever. (Doc. 15).

On January 29, 2024, this Court issued an Order severing all plaintiffs other than Simmons and requiring that Simmons file an amended complaint setting out her individual claims. (Doc. 24, at p. 5). On January 30, 2024, Simmons filed her Second Amended Complaint ("SAC," Doc. 25), which asserted claims pursuant to the FLSA based on Walmart's alleged misclassification of her as exempt, for unjust enrichment, and for attorneys' fees and expenses under O.C.G.A. § 13-6-11. (Doc. 25, at ¶¶ 49-68). Walmart moved to dismiss the SAC for failure to state a claim on which relief can be granted, demonstrating that Simmons' SAC failed to plead sufficient facts to state a claim for relief and that her state law claims were preempted by the FLSA. (Doc. 28). On February 14, 2024, the Court directed Simmons to file an amended complaint "to address the pleading deficiencies outlined in [Walmart's] motion" by March 1, 2024. (Doc. 29, at p. 4). The Court advised that Simmons "should carefully consider the authority cited in [Walmart's] motion, including but not limited to the Campbell case discussed [in the motion and order]." (*Id.*)

On March 1, 2024, Simmons filed her Third Amended Complaint ("TAC," Doc. 31), which alleges violations of the FLSA based on Walmart's alleged misclassification of Simmons as exempt. (Doc. 31, at ¶¶ 51-64). The Court denied Walmart's prior Motion to Dismiss as moot, and directed Walmart to "file an answer or responsive motion" to the TAC by March 15, 2024. (Doc. 32). Walmart then filed a Motion to Dismiss the TAC. ("Motion to Dismiss," Doc. 33). That Motion to Dismiss was fully briefed as of April 10, 2024 (Docs. 34, 37).

On October 9, 2024, the R&R was entered in this matter, recommending that Walmart's Motion to Dismiss the TAC be denied. (Doc. 49, p. 1). Walmart respectfully requests that the Court decline to adopt the R&R, and instead, grant Walmart's Motion to Dismiss.

## IV.  <u>SUMMARY OF RELEVANT FACTS[1]</u>

Simmons is an "ex-employee" of Walmart who was hired on or about April 21, 2003 and was terminated on or about August 25, 2022. (Doc. 31, at ¶¶ 8-9). Simmons alleges she worked for Walmart as a "Transportation Operations Manager." (*Id.*, at ¶ 10). Simmons alleges that she "was never paid overtime premiums" because of "intentional misclassification.…during the relevant period of this action," and defines the "Relevant Period for this Action" as "between August of 2019 to August 25, 2022." (*Id.*, at ¶¶ 2, 13).

---

[1] Other specific facts will be cited in connection with the relevant objections.

Simmons' allegations as to alleged overtime work are bare bones. Simmons alleges she worked "in excess of 40 hours most workweeks" but was not paid overtime. (*Id.*, at ¶¶ 11, 14). Simmons contends she worked a "significant amount of hours over 40 hours during **many [or most]** workweeks," and that she was "considered an essential worker during Covid and was required to pick up extra time to cover for the needs of [Walmart]." (*Id.*, at ¶¶ 3, 9, 11, 34) (emphasis added). Simmons provides only the following examples: (1) she alleges she worked 66 hours between January 25, 2021 and January 29, 2021; (2) she alleges she worked 53 hours between August 15, 2021 and August 18, 2021; (3) she alleges she worked 66 hours between November 21, 2021 and November 27, 2021; (4) she alleges she worked 60 hours between February 21, 2022 and February 25, 2022. (*Id.*, at ¶¶ 12, 34). While Simmons provides these four (4) examples of short periods in either 2021 or 2022 in which she alleges she worked more than 40 hours per week and alleges she worked "a significant amount of hours in excess of forty in **many** work weeks," she doesn't provide the total number of hours she alleges she worked overtime during the relevant period of time during her employment or identify the other weeks she alleges she worked overtime. (*See id.*, at ¶¶ 3, 12, 34).

Simmons also makes bare allegations about her alleged misclassification, such as parroting the statutory language of particular exemptions without requisite specificity. Simmons alleges that she held the title of "manager" but that the "primary

duties … did not fall under any exemption." (*Id.*, at ¶ 35). Simmons vaguely alleges that Walmart "utilizes a centralized structure of management and employees," but this phrase is not clearly defined and is, in itself, vague. (*Id.*, at ¶¶ 36-39). The TAC also alleges that when Simmons allegedly "asked about receiving compensation" she was told, "'You are a manager. You are always on the clock.'" (*Id.*, at ¶ 45). Simmons claims she "did not meet the definition of learned professional. She did not perform computer work and she did not perform outside sales for [Walmart] as defined by the FLSA." (*Id.* at ¶ 40).

Simmons fails to describe the nature of her job duties. (*See id.*). Aside from alleging that Simmons "often" performed "manual tasks" which included "cleaning trash out of pick module locations…and cleaning out damages from the damage department," there are no allegations describing when and how much time she allegedly performed these "manual tasks," nor does she describe the actual job duties that her position as a "Transportation Operations Manager" entailed. (*Id.*, at ¶¶ 10, 35-41). Simply alleging that Simmons was not employed in an "exempt" position is not sufficient to show "why" the exemptions do not apply to Simmons.

As discussed further below, Simmons' alleged "facts" are insufficient and warrant dismissal of her TAC.

## IV.   **SPECIFIC OBJECTIONS**

### A.   **Motion to Dismiss Standard of Review**

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "When considering a motion to dismiss, all facts set forth in [a] plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). A motion to dismiss under Rule 12(b)(6) "is granted … when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "provide the grounds of his entitlement to relief [and the complaint] requires more than labels and conclusions[.]" *Twombly*, 550 U.S. at 545 (internal citations and quotations omitted). "[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [a plaintiff]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief[,]" *Ashcroft v. Iqbal*, 556 U.S.

662, 663 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must still contain "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations omitted). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Further, there are two "working principles" governing a motion to dismiss. *Id.* at 678. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (emphasis added). Instead, a court considering a motion to dismiss should only accept that all factual allegations are true. *See id.* (emphasis added). Accordingly, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

The second working principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific task, requiring the reviewing

court to draw upon its judicial experience and common sense. *Id.* The court must disregard "labels and conclusions" and "naked assertions devoid of further factual enhancement." *Id.* at 678, 698; *Twombly*, 550 U.S. at 555-56. (internal citations omitted). Based on the case law above, the R&R erred in denying Walmart's Motion to Dismiss.

**B.** **The R&R Erred in Concluding That Simmons Pleaded Enough Facts to State a Claim For Relief.**

The TAC fails to plead facts sufficient to state a claim, and the R&R erred in concluding otherwise. The primary cases cited in the R&R – *Hernandez v. Anderson*, No. 5:14–cv–577–Oc–39PRL, 2015 WL 3514483, *6 (M.D. Fl. June 4, 2015) and *Obertein v. Assured & Assocs. Personal Care of Georgia, Inc,* NO. 1:14-cv-0490-AT, 2015 WL 13546465, *2 (N.D. Ga. Feb. 23, 2015) – came to the conclusion that the FLSA claims at issue there were *insufficient* as pleaded. (*See* Doc. 31, at pp. 5, 9). The same conclusion applies here.

In *Hernandez v. Anderson*, the court concluded that "[g]iven its overall lack of factual information, Plaintiff's Complaint constitutes little more than a 'formulaic recitation of the elements of a cause of action,' and it is an incomplete one at that. ... Specifically, because the Complaint fails to provide sufficient factual support to properly allege a claim for unpaid overtime wages under the FLSA," the court granted the motion to dismiss. *Hernandez*, 2015 WL 3514483, *6. The court concluded that the plaintiff in *Hernandez* failed to sufficiently plead the employer

was an enterprise engaged in interstate commerce. (*Id.*, at *3 – 4). For example, the plaintiff's "bare allegation" that "[d]efendants are joint employers and/or common enterprise with regard to Plaintiff's employment" was not enough. *Id.* (internal quotations omitted).

Furthermore, as to the overtime and willfulness allegations, the court in *Hernandez* concluded that those allegations were likewise "bare bones." (*Id.*, at *5-6). The court noted that the plaintiff "alleges that he worked for Defendants between December 2011 and December 2013, and that he was denied some unspecified amount of overtime. … Other than providing the general timeframe during which he worked, and claiming that he was not compensated for 'off the clock work,' 'travel between jobsites,' and 'skipping lunches'[plaintiff] fails to provide any dates or date ranges during which he worked overtime, or 'any other factual basis on which this Court can make a "just and reasonable inference" as to the amount and extent of [his] work.'" (*Id.*, at *5) (citing *St. Croix v. Genentech, Inc.*, No. 8:12–cv–891–T–33EAJ, 2012 WL 2376668, at *2 (M.D. Fla. June 22, 2012) (granting motion to dismiss where plaintiff failed to provide sufficient factual support to demonstrate that she was inadequately compensated under the FLSA)). "The Eleventh Circuit has required something more than that which Plaintiff has alleged: a plaintiff must at least provide '*evidence of the amount and extent of ... work*' in order to survive a motion to dismiss." *Id.* (emphasis added) (citing *Rance v. Rocksolid Granit USA,*

10

*Inc.*, 292 F. App'x 1, 2 (11th Cir. 2008) (affirming district court's dismissal of FLSA overtime claim for failure to meet the "just and reasonable inference" standard because plaintiff's "complaint and attached documentation provide no evidence of the amount and extent of [plaintiff's] work")). Likewise, in *Hernandez*, the allegations that "Defendants' failure to pay Plaintiff the required overtime pay was intentional and willful" was not enough to demonstrate that the defendants' alleged failure to pay him overtime was intentional. (*Id.*, at *6).

In *Obertein v. Assured & Assocs. Personal Care of Georgia, Inc.*, the court again agreed that "[n]onetheless,…the fairly bare-boned [complaint] …lacks detail necessary to describe the nature of their job duties and the nature of the Defendants' overtime violations and is therefore subject to dismissal." *Obertein*, 2015 WL 13546465, * 2. In *Obertein*, the defendants contended that the plaintiff made "conclusory allegations that Plaintiffs 'regularly worked in excess of forty (40) hours each week' and that 'Defendants failed to pay [them] at one and one half [their] regular rate for work in excess of forty (40) hours in any week,' without any supporting factual detail for these general allegations." (*Id.*) The plaintiffs alleged they "held positions (registered nurses, administrative assistant, and general manager) which are generally recognized as exempt from the overtime provisions of the FLSA, [with] conclusory allegations that Plaintiffs were 'not employed in a bona fide [administrative, executive, or professional] capacity,' and were 'not exempt

from the maximum hour requirements of the FLSA by reason of any exemption'." (*Id.*) The court concluded these allegations were insufficient to demonstrate "why" the exemptions did not apply, and that they "lack[ed] detail necessary to describe the nature of their job duties and the nature of the Defendants' overtime violation." (*Id.*) The *Obertein* court granted the plaintiff leave to file an amended complaint, and "require[d] Plaintiffs to provide some description of their primary job duties and a general basis for the alleged overtime violations, i.e. whether Defendants misclassified Plaintiffs as exempt, or whether Plaintiffs were required to work off the clock, on weekends, or through meal breaks." (*Id.*)

Despite that Simmons is now on her *Third* Amended Complaint, her TAC fails to provide more than "some unspecified amount of overtime," a "general time frame," and that she was not compensated for alleged "overtime." *See Hernandez*, 2015 WL 3514483, *6. The phrase "significant amount of hours over 40 hours during **many [or most]** workweeks" is vague and non-specific and does not give proper notice of any specific claim for overtime. (*Id.*, at ¶¶ 3, 11, 33, 34) (emphasis added). The TAC does not identify exactly what number of workweeks Simmons claims she worked over 40 hours during her employment. (*See id.*). Simmons provides only four (4) examples of short periods in either 2021 or 2022 in which she alleges she worked more than 40 hours per week and alleges she worked "a significant amount of hours in excess of forty," but she doesn't provide the total

number of hours she alleges she worked overtime during the relevant period of time during her employment. (*See id.*, at ¶¶ 12, 34). Furthermore, while she claims her rate of pay was "$41.28/hour plus bonuses and benefits," (*id.*, at ¶ 9) the TAC does not clarify when this rate allegedly applied during Simmons' employment, nor does it quantify the "bonuses and benefits." Finally, the "relevant time period" is beyond any possible statute of limitations period. (*Id.*, at ¶ 9); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1280 (11th Cir. 2008).

Like *Obertein,* the "fairly bare-boned [complaint] …lacks detail necessary to describe the nature of their job duties and the nature of the Defendants' overtime violations and is therefore subject to dismissal." *Obertein*, 2015 WL 13546465, * 2. Aside from alleging that Simmons "often" performed "manual tasks" which included "cleaning trash out of pick module locations…and cleaning out damages from the damage department," there are no allegations as to what Simmons actually alleges her job as a "Transportation Operations Manager" entailed, nor does she describe when and how much time she allegedly performed these "manual tasks." (Doc. 31, at ¶¶ 10, 35-41).

Allegations that Simmons was "not employed in a bona fide [exemption]… are insufficient." *See Obertein*, 2015 WL 13546465, *2. The TAC contains vague allegations regarding Walmart's alleged "centralized structure of management" (a phrase which is not clearly defined and is, in itself, vague). (Doc. 31, at ¶¶ 36-39).

The TAC adds an equally vague allegation that Simmons "did not meet the definition of learned professional" and that she "did not perform computer work" or "outside sales … as defined by the FLSA." (*Id.*, at ¶ 40).

Furthermore, the R&R relies on the Court's Order in *Moeller v. Wal-Mart Associates, Inc.*, No. 2:24-cv-00023-SCJ, a case of one the plaintiffs severed from this matter. (Doc. 49, at pp. 8-9). However, that Order cites to *Secretary of Labor v. Labbe*, 319 F. App'x 761 (11th Cir. 2008), an unpublished decision that was decided pre-*Iqbal*, for the proposition that "[u]nlike the complex antitrust scheme at issue in *Twombly* that required allegations of an agreement suggesting conspiracy, the requirements to state a claim of a FLSA violation are quite straightforward." (*Moeller*, No. 2:24-cv-00023-SCJ, Doc. 15, p. 3). However, this Court has declined to follow *Labbe*, and instead applies the appropriate pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) as noted in this Court's prior Order. (Doc. 29, p. 3).

In *Campbell*, the court agreed with the defendant and applied the pleading standards in *Twombly* and *Iqbal*. *Campbell v. High Rail and Fence, LLC*, No. 3:18-cv-00004-TCB, 2018 WL 11440993, at *1 (N.D. Ga. May 17, 2018). In so doing, the court "decline[d] to follow the Eleventh Circuit's unpublished, pre-*Iqbal* decision in *Secretary of Labor v. Labbe*, 319 F. App'x 761 (11th Cir. 2008)." *Id.* The court in *Campbell* noted that the Northern District had "held on a number of

occasions" that the *Twombly* pleading standard was extended to "all civil actions." *Id.* (citing *Rogers v. City of Atlanta*, 214 F. Supp. 3d 1314, 1318 (N.D. Ga. 2016) (citing the *Twombly-Iqbal* pleading framework and stating, "It is well settled that these pleading standards apply in *all civil cases*" (emphasis added)); *Dorsey v. Georgia Dep't of State Rd. & Tollway Auth. SRTA*, No. 1:09-cv-1182-TWT, 2009 WL 2477565, at *6, n.7 (N.D. Ga. Aug. 10, 2009) ("Although the *Twombly* standard was announced in an antitrust context, the Supreme Court recently clarified that the *Twombly* standard applies to all civil cases.") (citing *Iqbal*, 556 U.S. at 684)). In departing from *Labbe*, *Campbell* notes that *Labbe* is not binding, and that it was decided pre-*Iqbal*, "in which the Supreme Court clarified that *Twombly* was based on its 'interpretation and application of Rule 8.'" *Id.* "Now that *Iqbal* has confirmed that satisfying *Twombly-Iqbal* is the *sine qua non* of stating a claim under Rule 8, the Court must analyze all civil claims in light of their requirements—this FLSA action included." *Id.*

"Many courts faced with a post-*Iqbal* 12(b)(6) challenge to an FLSA complaint have taken the approach utilized in *Lundy v. Catholic Health System of Long Island*, 711 F.3d 106 (2d Cir. 2013) [, where the court] rejected a complaint that used words like 'occasionally,' 'approximately,' or 'typically' to describe the plaintiff's allegations of periods of undercompensated overtime." *Campbell*, 2018 WL 11440993, at *2. The similarly-phrased descriptions in the TAC, including "a

significant amount of hours over 40 hours during *many* workweeks," "in excess of 40 hours *most* workweeks," "a significant amount of hours in excess of forty (40) in *many* work weeks," and "in excess of forty (40) hours in a single workweek on *many* occasions," are vague and non-specific. (Doc. 31, at ¶¶ 3, 11, 33, 34) (emphasis added). The TAC does not identify exactly what number of workweeks Simmons claims she worked over 40 hours during her employment, nor the total specific number of hours. (*See id*.).

Simmons' TAC is like the complaint in *Campbell*. *See Campbell*, 2018 WL 11440993, at *2-6. As here, the plaintiffs alleged that they were underpaid "[d]uring periods throughout the last three years," but did not identify any specific workweeks when that occurred. *Id*. at *2-3. The plaintiffs in *Campbell* also stated that they "have frequently worked more than 40 hours per week without being paid overtime compensation." *Id.* (italicizes omitted). The court concluded its analysis of the overtime averments by stating the following:

> Here, Plaintiffs have not shown that in a given workweek—that is, in a discreet work period as opposed to a large span of time containing numerous workweeks—they were not paid overtime. Without more factual meat on the bones, the complaint's averments do not rise to the level of plausibility required by *Twombly* and *Iqbal*.

(*Id.* at *2).

The *Campbell* court later denied a subsequent motion to dismiss for failure to state a claim where the plaintiffs in *Campbell* "adequately address[ed] the Court's

concern." (Doc. 29, at p. 3, n. 1); *Campbell v. High Tech Rail & Fence, LLC*, ("*Campbell II*"), No. 3:18-cv-4-TCB, 2019 WL 13207595, *2 (N.D. Ga. Feb. 4, 2019). However, the facts pled in *Campbell II* are distinguishable from those alleged here. In *Campbell II*, the complaint "aver[red] specific workweeks in which Plaintiffs were allegedly underpaid, and by how much" and provided "allegations of specific overtime-payment deficiencies for specific workweeks." *Campbell II*, 2019 WL 13207595, at *2-3. For example, the *Campbell II* Complaint (Doc. 33-2) specifically alleged that plaintiff "Campbell calculates his unpaid overtime compensation to be $7,200.00. That calculation is made multiplying Plaintiff Campbell's overtime rate ($15.00) with the number of overtime hours he worked during his employment at High Tech (480). Plaintiff Campbell seeks liquidated damages equal to that amount, for a total overtime claim of $14,400.00…" (*See* Doc. 33-2, pp. 12-13). The *Campbell II* Complaint also detailed a lengthy specific number of weeks in which the plaintiff alleged he worked overtime and went on to identify the specific amount of liquidated damages as to his overtime claim as well. (*Id.*). That level of specificity is not present here in the TAC. *See also Hanson v. Harris Teeter, LLC,* No. CV 216-54, 2016 WL 6836936, at *2 (S.D. Ga. Nov. 18, 2016).

Thus, Simmons' TAC fails to state a claim upon which relief may be granted, and Walmart's Motion to Dismiss should be granted.

## V.    **CONCLUSION**

For the reasons set forth above, as well as the facts and legal argument set forth in Walmart's Motion to Dismiss, Walmart respectfully requests that the Court decline to adopt the Report and Recommendation, and instead, grant Walmart's Motion to Dismiss in its entirety, and dismiss Simmons' Complaint in its entirety with prejudice.

Respectfully submitted, this 23rd day of October, 2024.

CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP

/s/ Sarah M. Phaff
SARAH M. PHAFF
Georgia Bar No. 140626

Suite 2400
230 Peachtree Street, N.W.
Atlanta, GA  30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955
sphaff@constangy.com

/s/ Alyssa K. Peters
ALYSSA K. PETERS
Georgia Bar No. 455211

577 Mulberry St., Suite 710
P.O. Box 1975
Macon, GA 31202-1975
(478) 750-8600
apeters@constangy.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATION OF COMPLIANCE</u>

The undersigned counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in L.R. 5.1, specifically Times New Roman 14.

Dated this 23rd day of October, 2023.

CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP

/s/ Sarah M. Phaff
SARAH M. PHAFF
Georgia Bar No. 140626

Suite 2400
230 Peachtree Street, N.W.
Atlanta, GA  30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955
sphaff@constangy.com

/s/ Alyssa K. Peters
ALYSSA K. PETERS
Georgia Bar No. 455211

577 Mulberry St., Suite 710
P.O. Box 1975
Macon, GA 31202-1975
(478) 750-8600
apeters@constangy.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2024 I electronically filed the foregoing *DEFENDANT WALMART'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION* using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record for Plaintiff.

Respectfully submitted, this 23rd day of October, 2024.

CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP

/s/ Sarah M. Phaff
SARAH M. PHAFF
Georgia Bar No. 140626

Suite 2400
230 Peachtree Street, N.W.
Atlanta, Georgia 30303-1557
Telephone: (404) 525-8622
Facsimile: (404) 525-6955
sphaff@constangy.com